**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

**SERI IRAZOLA**
30123 Merchant Court
Great Falls, Virginia 22066,

    *Plaintiff,*

  v.

**THE FORS MARSH GROUP**
1010 N. Glebe Rd., Suite 510
Arlington, VA 22201,

    **Serve:**
        **Registered Agent**
        Sean Marsh
        1010 N. Glebe Rd. Suite 510
        Arlington, VA 22201

    *Defendant.*

**Case No.: 1:19-cv-00236**

**CIVIL COMPLAINT FOR EQUITABLE
AND MONETARY RELIEF AND DEMAND FOR JURY**

Plaintiff Seri Irazola ("Plaintiff" or "Irazola") brings this civil complaint against Defendant The Fors Marsh Group ("FMG") for illegal retaliation in violation of Federal False Claims Act, 31 U.S.C. § 3730(h) ("FCA"); and illegal retaliation in violation of the 2013 National Defense Authorization Act ("NDAA"), 41 U.S.C. § 4712.

**INTRODUCTION**

1.      FMG is a government contractor specializing in, among other things, marketing, communications, and organizational behavior research.

2.      FMG hired Plaintiff in July of 2017 as the Director of Public Policy Evaluation.

1

3. Throughout most of her tenure at FMG, Plaintiff was exposed to demeaning and sexist comments. For example, Brian Griepentrog ("Griepentrog"), minority owner of FMG, said of one departing female director: "No *woman* is worth that," referring to the amount of money the female director had requested.

4. In March 2018, Griepentrog made a similar comment about another female employee, Carrie Von Bose. Griepentrog said of Von Bose that: "she thinks that she was worth more than she actually is," or words to that effect.

5. Shortly after Griepentrog's comment about Von Bose, Plaintiff attended a private meeting with CEO Sean Marsh ("Marsh"), majority owner and co-founder of FMG. Plaintiff and Marsh discussed the "hostile work environment" in which Plaintiff found herself.

6. Throughout her tenure, Plaintiff observed conduct and communications that she, a former Director at the Department of Justice, believed to be in violation of contracting laws and regulations.

7. Specifically, FMG officials were in regular contact with program and contracting personnel from the Federal Voting Assistance Program ("FVAP") in an effort to manipulate a request for proposal ("RFP") so that FMG could more easily compete for the award.

8. Plaintiff directed her concerns about such communications directly to Griepentrog who stated: "That's how we do it here and that's part of your job now."

9. In or about March of 2018, Plaintiff, believing herself to be in the presence of Griepentrog, reiterated her concerns to Mary Beth Lombardo, Business Development Specialist, when she discussed the improper communications between FMG and the government. Lombardo told Plaintiff in or around early April of 2018 that she had relayed Plaintiff's concerns to her supervisory chain.

10. Less than one month after Plaintiff's discussion with Marsh about the "hostile work environment" and in the weeks following her disclosure to Lombardo about improper communications between FMG and government personnel, FMG terminated Plaintiff's employment.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States.

12. This Court has personal jurisdiction over Defendant FMG because FMG transacts business in this judicial district.

13. Venue is proper in this Court under 28 U.S.C. § 1391(c) and 1395(a) because Plaintiff complained of illegal acts that occurred within this judicial district and because the Defendant transacts business within this judicial district.

14. The Federal Voting Assistance Program ("FVAP") is an educational program established by the United States Department of Defense ("DoD"). Accordingly, the Department of Defense's Office of Inspector General ("OIG") is the proper recipient of complaints of retaliation arising under the NDAA, 41 U.S.C. § 4712.

15. On June 22, 2018, Plaintiff filed an administrative complaint of retaliation with the DoD/OIG, alleging violations of the NDAA, 41 U.S.C. § 4712.

16. Plaintiff's 210-day administrative exhaustion period concluded on January 22, 2019. Accordingly, Plaintiff has exhausted her administrative remedies and this matter is now properly before the Court.

## PARTIES

17. Plaintiff is a resident of Loudoun County, Virginia, and was hired by FMG as its Director of Public Policy Evaluation in August 2017.

18. Defendant FMG is an applied research company which works primarily with federal government clients.

19. FMG is incorporated in Virginia and headquartered in Arlington, Virginia.

## FACTUAL ALLEGATIONS

*Background*

20. FMG is owned by three men: Sean Marsh, Ben Garthwaite, and Brian Griepentrog.

21. On August 28, 2017, Plaintiff joined FMG as its Director of Public Policy Evaluation. In or around February 2018, FMG promoted her to the position of Vice President of Public Policy Evaluation. During Plaintiff's tenure, she acquired new business and established and maintained important client relationships. Plaintiff's work was pivotal in FMG's award of a contract with Cadmus—a partner organization—that was valued at $8 million.

22. Plaintiff previously worked at the Department of Justice ("DOJ") as a Director of the Office of Research and Evaluation in the National Institute of Justice.

23. In this capacity, Plaintiff was interviewed by the Office of Special Counsel regarding improper relationships between government personnel and current and/or potential contractors and grantees. Specifically, Plaintiff was called to provide information in an investigation as to whether certain government employees were providing applicants with unfair advantages, contravening federal acquisition regulations.

24. Plaintiff witnessed the consequences of similar misconduct by another former

employer, Company A. The government excluded Company A, the incumbent, from competing on an $8 million contract because of improper communications between Company A's employees and the government. As a result, Company A terminated the individual who was improperly communicating with the government.

*Whistleblower Retaliation*

25. In or around September 2017, Plaintiff and Griepentrog met with David Beirne, FMG's client from the Federal Voting Assistance Program.

26. FVAP is a voter assistance and education program that ensures that members of the U.S. military, their family members, and U.S. citizens overseas are aware of their right to vote and have resources to do so.

27. FVAP was established by the Department of Defense of Defense ("DoD") and sits within the Office of People Analytics ("OPA").

28. Beirne is the director of FVAP. Nate DuBois is the FVAP Contracting Officer's Representative ("COR").

29. During this meeting, Griepentrog and Beirne discussed upcoming task orders and the timing of the task orders for the FVAP Project. Information for the FVAP Project had not yet been released or forecasted.

30. In an Uber ride following this September 2017 meeting, Plaintiff told Griepentrog that she felt uncomfortable being part of these discussions since clearly FMG was getting an advantage over its competition from the Director of FVAP. Griepentrog told Plaintiff that it was "part of her job" and that "this is the way FMG does business and this is the way I expect you to do business," or words to that effect.

31. Around September or October 2017, Griepentrog came into Plaintiff's office and

outlined the tasks and budget in the FVAP Project that he and Beirne had discussed. The request for proposals at that time was not public.

32. Around November or December 2017, Griepentrog asked Plaintiff to contact Beirne to get information on the upcoming re-competition (recompete) of FVAP's 5-year indefinite delivery/indefinite quantity (IDIQ) contract that was not yet released.

33. Plaintiff asked her subordinate, Krysha Gregorowicz, if she had been asked to do this in the past. Gregorowicz said she had and that she was frequently in contact with FVAP staff – including the FVAP COR – to get information.

34. Plaintiff told Gregorowicz that this was not legal.

35. Gregorowicz told Plaintiff that Griepentrog had a personal relationship with Matt Boehmer, the Director of OPA, and that Boehmer had suggested to Jason Fors and Marsh that they should start a company so Boehmer could throw business their way.

36. OPA has been one of FMG's largest revenue sources since 2003.

37. Between December 2017 and February 2018, Griepentrog asked Plaintiff multiple times to contact Beirne to gain information on the task orders and request for proposal for the FVAP Project and upcoming FVAP IDIQ recompete.

38. In February 2018, Plaintiff, Garthwaite, Beirne, DuBois, Mary Beth Lombardo and another FMG employee attended a call with Beirne to discuss ways in which FVAP should structure the recompete contract so that FMG could submit a winning bid for the FVAP Project recompete.

39. Beirne solicited input from Garthwaite as to whether FMG would prefer the contract for the FVAP Project be "full and open" or be set aside for small businesses. Specifically, Beirne asked if FMG was willing to "fight with the big dogs, and compete full and

open," or words to that effect.

40. Garthwaite replied that while not preferable, if that was the only way FMG could win the work, FMG could compete full and open. Beirne then said he would push the contracting officer to make the request for proposal full and open.

41. Following the call, Plaintiff, believing she was in the presence of Griepentrog, stated to Lombardo that conversations like the one between Garthwaite and Beirne should not be happening. Plaintiff further stated it was inappropriate for contractors to speak with members of the government about how to structure a solicitation as doing so could evidence a conflict of interest. Lombardo commented that such conduct was "rampant" in the business development office at FMG.

42. In late February 2018, Plaintiff received a phone call from Beirne. Beirne was enraged because the contracting officer would not make the FVAP recompete request for proposal full and open.

43. Around this same time, Griepentrog told Plaintiff that he was going to approach Boehmer and talk to him about structuring the procurement in a way that would ensure FMG remained the contractor for both the FVAP and OPA recompetes.

44. At Griepentrog's instruction, Plaintiff sent Beirne text messages asking for details on the recompete such as the length of the project. Beirne provided the details as requested.

45. On March 7, 2018, Plaintiff texted Griepentrog to let him know that Beirne was going to restructure the upcoming FVAP recompete contract to accommodate FMG. Beirne intended to break out the survey work—which comprised of more than 65% of the FVAP contract dollar amount—and put that work under a full and open OPA solicitation, thus allowing FMG to serve as the prime contractor.

46.	On March 8, 2018, Griepentrog replied, "Ok, this is good. Sounds like him and Matt [Boehmer] spoke."

47.	On or about April 3, 2018, the business development department met with Plaintiff, Gregorowicz, Garthwaite, Lombardo, and another FMG colleague. The goal of this meeting was to strategize the best way to staff the upcoming recompete for the FVAP project.

48.	After that April 3, 2018 meeting, Plaintiff, during an open door conversation with Lombardo, again disclosed her discomfort with the contacts between FMG and the government.

49.	Shortly after this conversation, Lombardo's supervisor, the Director of Business Development who reports directly to Garthwaite, asked Lombardo if Plaintiff was uncomfortable and no longer wanted to be part of these discussions with FVAP. Lombardo responded that "Seri [Irazola] is concerned that this communication between FMG and DoD is illegal."

50.	On May 4, 2018, the OPA recompete was released to the public. It was structured as FMG, Boehmer, and Beirne had discussed. The project was awarded to FMG on June 20, 2018 to FMG. The contract number is 47QFPA18D0004; the award amount is $49,140,932, and Deltek's GovWin software estimates the contract to cost between $50 and $100 million over five years.

51.	The FVAP recompete was released to the public on September 26, 2018. It was structured as FMG, Boehmer, and Beirne had discussed. No award has been made, and Deltek's GovWin software initially estimated an award in October 2018, but now estimates an award in January 2019 with no explanation for the delay.

*Termination*

52.	On April 9, 2018, Griepentrog, accompanied by HR Director Christina Daugherty, told Plaintiff that FMG was firing her. Griepentrog told Plaintiff, "Your values do

not fit ours" and "You are not a fit for the culture here."

53. Prior to this, FMG had not issued Plaintiff any written notice of any deficiencies with respect to either her performance or communication style. FMG also promoted Plaintiff to a VP position in February 2018.

54. FMG has a progressive disciplinary policy that it violated. FMG first requires its managers to issue a verbal warning and then a formal written warning. If neither warning is successful, FMG will put the employee on a formal performance remediation plan. Only after these warnings and remediation plans have failed to correct the misconduct, will FMG terminate an employee.

55. FMG violated its progressive disciplinary policy when it terminated Plaintiff without providing any written notice of deficiencies.

56. FMG's decision to terminate Plaintiff came within days of her disclosing concerns about the improper communications and relationships between FMG and the government.

57. The day after FMG terminated Plaintiff, FMG terminated Lombardo, the only other employee at the company who disclosed concerns about the improper and illegal communication between FMG and the federal government.

### COUNT I
**Retaliation**
**Violation of the Anti-Retaliation Provisions of the Federal False Claims Act**
**31 U.S.C. § 3730(h)**

58. Plaintiff reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

59. FMG terminated Plaintiff because she made efforts to prevent one or more false claims from being asserted by informing FMG that its communications with the government and

FMG's tactics to win the upcoming contract were improper.

60. By discussing projects before they are made public and working with the director of a project to change the request for proposal so that FMG could win the request, Plaintiff reasonably believed that FMG was conspiring to obtain a contract through fraudulent conduct.

61. Plaintiff's disclosures implicate a fraud-in-the-inducement theory of liability under the False Claims Act. Courts recognize a fraud in the inducement theory of liability under the FCA where a contract benefit was originally obtained through false statements or fraudulent conduct.

62. Where the award of a government contract is predicated upon illegal conduct (such as unlawful communications between a contractor and government personnel), every claim for payment submitted thereafter is inherently false.

63. Plaintiff engaged in FCA-protected activity when she:

  a. In September of 2017, Plaintiff expressed her concerns to Griepentrog about the regular contact FMG officials had with personnel from the FVAP about efforts to manipulate a RFP to more easily compete.

  b. In or about December 2017, Plaintiff advised Gregorowicz that it was not legal that Gregorowicz had frequently in contact with FVAP staff – including the FVAP COR – to get information related to the upcoming re-competition.

  c. In or about March of 2018, Plaintiff reiterated her concerns to Lombardo and discussed the improper communications between FMG and the government. Lombardo told Plaintiff in or around early April of 2018 that she had relayed Plaintiff's concerns to her supervisory chain.

  d. Plaintiff further stated it was inappropriate for contractors to speak with members

of the government about how to structure a solicitation as doing so could evidence a conflict of interest.

e. In April of 2018, Plaintiff again disclosed her discomfort with the contacts between FMG and the government during a conversation with Lombardo.

64. FMG, through Griepentrog, had knowledge of Plaintiff's protected activity because Plaintiff directly told Griepentrog that she felt uncomfortable with Griepentrog's conversation with Beirne.

65. Following Plaintiff's disclosures, Defendants retaliated against Plaintiff by terminating her employment.

66. Temporal proximity strongly suggests that Plaintiff's protected disclosures caused her termination.

67. Defendants, knowing that Plaintiff was engaging in such activity, terminated Plaintiff because of her protected conduct.

68. As a direct and proximate result of the aforementioned unlawful retaliatory employment practices, Plaintiff has and will sustain permanent and irreparable economic harm and other harms.

## COUNT II
### Whistleblower Retaliation
### The 2013 National Defense Authorization Act,
### 41 U.S.C. § 4712, *et seq.*

69. Plaintiff incorporates the allegations set forth in foregoing paragraphs as though fully alleged herein.

70. Plaintiff is an "employee" as that term is defined by the NDAA.

71. FMG is a "contractor," "subcontractor," "grantee," or "subgrantee" as defined by the NDAA.

72. Plaintiff has exhausted her administrative remedies under the National Defense Authorization Act by filing with the DoD/OIG.

73. The work performed by the FVAP Project is subject to the provisions of 41 U.S.C. § 4712.

74. FMG conspired with FVAP's director, Beirne, to reconstruct FVAP's request for proposal so that FMG could successfully win the FVAP project.

75. FMG's discussions with FVAP before the release of the request for proposals was in violation of 41 U.S.C. § 2102, which prohibits seeking the disclosure of bid or proposal information or source selection before the award is released.

76. Plaintiff disclosed to Griepentrog that she did not feel comfortable with the discussion and meeting they had with Beirne.

77. Griepentrog was the management official who had the responsibility to investigate, discover, or address the misconduct under 41 U.S.C. § 4712(a)(2)(G).

78. Plaintiff made this disclosure to Griepentrog because she reasonably believed that FMG's conduct was "an abuse of authority relating to a Federal contract or grant." 41 U.S.C. § 4712(a)(1).

79. FMG terminated Plaintiff because of her protected disclosures.

80. As a result of FMG's unlawful retaliation, Plaintiff has suffered monetary and emotional distress damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Seri Irazola respectfully requests that the Court enter judgment in her favor and award to her the following relief:

      A.      Judgment against Defendants in an amount of any wages, salary, employment benefits, or other compensation denied or lost to Plaintiff, including economic damages, liquidated damages, compensatory and punitive damages to be determined at trial;

      B.      Re-employment, reinstatement, promotion, front pay and benefits, or other equitable relief;

      C.      Pre-judgment interest;

      D.      Interest due on unpaid wages;

      E.      A reasonable attorney's fee and costs of this litigation;

      F.      Reasonable expert witness fees; and

      G.      Any other relief that this Honorable Court deems just and proper to award.

## JURY DEMAND

Plaintiff demands a jury for all issues proper to be so tried.

Respectfully Submitted,

 /s/ Adam Augustine Carter
R. Scott Oswald, Esq. (VA Bar No. 41770)
Adam Augustine Carter, Esq. (VA Bar No. 32722)
The Employment Law Group, P.C.
888 17th Street, NW, 9th Floor
Washington, D.C. 20006
(202) 261-2803
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
acarter@employmentlawgroup.com
*Counsel for Plaintiff*